ROUSSELOT & LANGOUMOIS *v.* JOHN P. KIRWIN AND WARDENS OF THE CHURCH OF ST. LOUIS, OF NEW ORLEANS.

In a building contract, in which it was provided that the contractor should be paid thirty thousand dollars, at the rate of twenty-five hundred dollars per month, on the certificate of the architect stating that the work done warranted the payment—it is incompetent for the sub-contractor who claims from the owner, under the Act of 1844, on the ground that the payments have been anticipated—to go behind the architect's certificate to show that it did not state the truth.

The Act of 1844, in its terms and spirit, protects the sub-contractor, or workman, against all payments in anticipation made by the proprietor to the undertaker of a building, *subsequent to the delivery of an attested account.*

APPEAL from the Second District Court of New Orleans, *Lea*, J. *J. W. Collins*, for plaintiffs. *Benjamin & Micou*, for Wardens Church of St. Louis, appellants.

BUCHANAN, J. The plaintiffs allege that they are carpenters and sub-contractors under the defendant, *Kirwin*, in the execution of work done by the latter for the other defendants, the religious corporation of the Wardens of the Church of St. Louis, of New Orleans; that *Kirwin* is indebted to them for work done upon said contract, to the amount of $7,280 dollars. They allege, further, that they have served an attested account upon the Church Wardens

on the 19th April, 1850; that *Kirwin* made no opposition to said account; and that the Church Wardens have made payments to *Kirwin*, in anticipation of their contract with him, by reason whereof they are bound to discharge the plaintiff's demand.

The plaintiffs had judgment in the District Court against the defendants, *in solido*, for the sum of four thousand one hundred and sixty dollars, with interest. From this judgment the Church Wardens have appealed.

The Act of 18th March, 1844, upon which this suit is founded, so far as the Church Wardens are concerned, ordains as follows:

"Every mechanic, workman or other person, doing or performing any work towards the erection, construction, or finishing of any building in this State, erected under a contract between the owner and builder or other person, whether such work shall be performed as journeyman, laborer, cartman, sub-contractor or otherwise, and whose demand for work and labor done and performed towards the erection of such building has not been paid and satisfied, may deliver to the owner of such building an attested account of the amount and value of the work and labor thus performed and remaining unpaid, and thereupon such owner shall retain out of his subsequent payments to the contractor the amount of such work and labor, for the benefit of the person so performing the same."

And again, in the sixth section of said Act:

"If, by collusion or otherwise, the owner of any building erected by contract as aforesaid, shall pay to his contractor any money in advance of the sum due on said contract, and if the amount still due the contractor, after such payment has been made, shall be insufficient to satisfy the demand made for work and labor done and performed, or materials furnished, the owner shall be liable to the amount that would have been due at the time of his receiving the account of such work, in the same manner as if no payment had been made."

The appellants are sought to be made liable to the appellees under the last recited section.

There were two building contracts passed between the appellants and *John P. Kirwin*; one dated the 12th of March, 1849, and the other the 22d June, 1849. By the first of these contracts, *Kirwin* obliged himself to do certain work upon the Cathedral in this city, within the delay of fourteen months from the date of the contract, for the price and sum of seventy-seven thousand dollars, payable, thirty thousand dollars during the progress of the work, at the rate of twenty-five hundred dollars per month, on the certificate of the architect, stating that the work done warrants the said payment; and the balance, $47,000, in two, three, four, five, six, seven and eight years from date of delivery and acceptance of the work, in bonds bearing interest, and secured by mortgage. The same contract further provides that should any extra work be done, it should be paid for, *proportionally, in the same manner as the said sum of seventy-seven thousand dollars.*

The contract of the 22d June, 1849, is for certain additional work to be done upon the Cathedral, for which the Church Wardens agreed to pay *Kirwin* the sum of nineteen thousand dollars, in bonds of one thousand dollars each, delivered to the said *Kirwin* as the works progress, and on the certificates of the architect, approved by the building committee, stating that the work done warrants the delivery, and in the following manner, to-wit: seven thousand dollars when the walls shall be raised to level of the second floor; seven thousand dol-

*Rousselot & Langoumois v. Kirwin et al.*

lars when the walls shall be raised to their proper height; and the balance when the flooring, flagging and pews shall be completed and accepted, the whole in said bonds.

The payments made by the Church Wardens under the contract of the 12th March, 1849, were as follows: In April, May, June, July, August, September, October, November and December, 1849, and January, 1850, ten months, $2500 each month, say, - - - - - - - - $25,000

Under the contract of June 22, 1849, they paid him, in August, 1849,     7,000

And in October, 1849, - - - - - - - - 7,000

Total, - - - - - - - - - - $39,000

The specifications of the petition, in relation to the anticipation of payments, are as follows: "That for the work under the first contract, the payments made amounted to more than the thirty seventy-sevenths of the work actually done; and that for the work under the second contract, the second payment, $7,000, was made before the completion of the walls, which are, in fact, not yet finished, (May, 1850.")

As to the first of these specifications, it appears to us untenable. We cannot concur in the construction which the counsel of plaintiffs has given to the contract on this point. The expressions of the contract of the 12th March, 1849, in relation to the mode in which payments are to be made, are imperfectly given. They have been already quoted in this opinion. Twenty-five hundred dollars were to be paid monthly, from the commencement of the work for twelve months, on the certificate of the architect that the work done warranted the said payment. These monthly payments were accordingly made for ten consecutive months, upon as many certificates of the architect *that the work done warranted the payment.* The apparent meaning of this phrase is that there was work done, at the date of each certificate, to the value of twenty-five hundred dollars since the last certificate. The brief of plaintiffs' counsel, however, presents us with an equation, by which it is demonstrated that the monthly work done should have been of the value of six thousand four hundred and sixteen dollars, instead of twenty-five hundred dollars, in order to entitle *Kirwin* to his certificate. The whole of this argument rests upon the word "proportionally," quoted above, as occurring in another clause of the same contract. In that clause, which relates to prospective extra work of an uncertain amount, it is agreed that the payments shall be made in the same way, *proportionally,* as for the contract work; that is to say, as we understand it, the whole amount of such extra work shall be divided into two portions, of which one shall be paid in monthly instalments of cash, and the other in bonds.

We consider the convention of the parties to have been an absolute one for the payment of the sum of twenty-five hundred dollars per month, provided the architect gave his certificate that there was such an amount of work done. We are further of opinion that the appellants are protected in such payment by the certificate of the architect, and that it is incompetent for the plaintiffs to go behind that certificate, and to show that it did not state the truth. The record even shows that plaintiffs benefitted by these periodical payments to *Kirwin,* for it exhibits a long list of cash payments from *Kirwin* to plaintiffs, amounting in the aggregate to $3,000, and extending through the period embraced in the monthly payments of cash from the appellants to *Kirwin.* We think the payments under the contract of 12th March, 1849, were not anticipated.

In relation to the second instalment, $7,000, paid under the contract of 22d June, 1849, we find but one sentence in the testimony which directly touches it. *Depouilly*, a witness of plaintiffs, and the architect charged with the superintendence of the work, says "witness does not recollect whether he approved any warrants in relation to the walls contracted· for in the second contract." The defendants appear, however, to be absolved from the necessity of proving that the payment was made upon the certificate of the architect and building committee, inasmuch as the petition of plaintiffs alleges that such certificates were given for all the payments, by collusion.

No witness mentions whether or not the walls were raised to their proper height at the time the second instalment upon the contract of the 22d June was paid. That payment was made in October, 1849. The work of *Kirwin* progressed for some three months after that payment, until the 19th January, 1850, when the tower fell, dragging down with it a portion of the walls, or injuring them so that they had to be in part rebuilt. On the 5th April, 1850, a contract of compromise was entered into between the Church Wardens and *Kirwin*, in which it is recited that the value of the walls fallen down, and those necessary to be pulled down by reason of the fall of the tower, had been fixed by appraisers, mutually chosen, at $7,890 ; that the other injuries to the building amounted to $1,800, which, with other items specified, made a total of $10,080; that the parties had agreed to divide this damage, and, accordingly, *Kirwin* bound himself to repair the damage for $5,040.

On the 26th April, 1850, the Church Wardens sued out an injunction to prohibit *Kirwin* from the farther prosecution of his work upon the Cathedral, alleging that he was using bad materials, &c. This injunction was, after hearing the evidence, made perpetual.

The plaintiffs had not filed an attested account with the Church Wardens at the time of the payment of the second instalment of the contract of 22d June, 1849. In fact, they did not file such account until six months after that payment, to wit: on the 19th April, 1850. In the meantime, *Kirwin* had been at work for three months, until the fall of the tower. The evidence leaves us entirely in the dark as to the point to which the raising of the walls had progressed, either at the time of the payment, (October, 1849,) or at the time of the fall of the tower and interruption of the work, (January, 1850.) We understand the law quoted in the commencement of this opinion, to be, in its terms and spirit, a protection of the sub-contractor or workman, against all payments in anticipation made by the proprietor to the undertaker of a building, *subsequent* to the delivery of an attested account. Even supposing the walls had not been raised to their proper height at the time the second instalment was paid, yet if that work were done afterwards, and before the delivery of the attested account of plaintiffs, the payment must be considered as made in due time. The delivery of the attested account fixes the right of the parties, at the time of such delivery. It is does not relate back to any previous time. The question to be solved is, was the second instalment due to *Kirwin*, under his contract with the Wardens, on, or before the 19th April, 1850 ? The Supreme Court held in the case of *Hale* v. *Wills*, 3d Annual Reports, which is the leading case on the construction of the Building Act of 1844, that sub-contractors and material men, employed by the undertaker, hold, as against the owner, under the building contract, and not beyond that contract.

The plaintiffs rely greatly, if not principally, upon the allegations made by

ROUSSELOT &
LANGOUMOIS
v.
KIRWIN ET AL.

the Church Wardens against *Kirwin*, in their suit against him, of which all the proceedings, including the evidence, are in evidence in this suit.

It is true, the Church Wardens have alleged that *Kirwin's* work was defective in every respect, and that some of the walls erected by him were out of plumb, and required to be taken down and rebuilt. But this establishes no claim on the part of plaintiffs against the Church Wardens. The intention of the Act of 1844 is not that the owner shall be punished for the bad workmanship of his builder. He paid for a good wall. The wall turned out to be bad, or was injured by the bad workmanship of the tower, and its consequent fall. We cannot thence infer bad faith or collusion on the part of the owner.

A careful examination of the evidence has failed in convincing us, that the payment of the second instalment of the building contract, of the 22d June, was anticipated, or that said instalment was not properly demandable, under the said contract, previous to the delivery of the attested account of plaintiffs to the Church Wardens.

Judgment of the District Court reversed, and judgment is hereby rendered in favor of defendants and appellants, the Church Wardens of the Church of St. Louis of New Orleans, and against the plaintiffs and appellees, with costs in both Courts.