PROVOSTY, J.
In these two consolidated cases the owner of a building and the surety on the bond of the contractor who constructed it are sued by subcontractors and iurnishers of materials for labor and materials that went into the building; and their defense is that the plaintiffs did not file with the owner of said building, nor record in the office of the recorder of mortgages, a sworn' statement of their claims within 45 days' of the completion of said building, as required by section 1, par. 3, of Act 134, p. 223, of 1900.
The house was constructed under a written contract duly recorded. This contract provided that the contract price should be paid in five equal installments, the first of which was to be due “when frame is complete” ; the second, “when building is weather boarded and roofed”; the third, “when second coat of plaster is on”; the fourth, “when house is completed and accepted”; and the fifth, “fifteen days after said buildr ings and works are all completed and accepted.” The contract was accompanied by drawings and specifications showing in detail how the work should be done, and it provided that:
“In each case of such payments, if you require it, a certificate shall be obtained and signed by your inspector, or any architect' you shall name, to the effect that the work is done in accordance with said drawings and specifications, and that they consider the payments properly due.”
The contract further provided as follows:
“Should any dispute arise respecting the true construction or meaning of the drawings or specifications. the same shall be decided by Mr. A. N. Robelot, architect, or by some other known capable architect, to be appointed by you, and his decision shall be final”—
and it provided further that the contractor was to perform, the work “to the satisfaction and under the direction of your (the owner’s) architect.” The owner did not appoint any other architect, so that Mr. Robelot remained the architect under whose direction and to whose satisfaction the house was to be constructed, and upon whose certificate of the work having been done in accordance with the drawings and specifications the owner was to be under the obligation of making payments:
The date fixed in the contract for the completion of the building was September 15th. On September 25th the contractor tendered it as completed; and, after examination of it by the owner and' the supervising architect, Mr. Robelot, the latter gave his certificate to the effect that it was completed in accordance with the drawings and specifications, and the owner made the fourth payment and moved into the house. On November 10, 1909, that is to say, 45 clear days after the date of the supervising architect’s certificate of the house having been completed in accordance with the drawings and specifications and of the owner’s having accepted it as such, the owner made the final payment, after having first obtained a certificate from the recorder of mortgages that no claims were recorded against the building. On that same day, but after the payment had been made, the two plaintiffs gave notice of their claims to the owner. Five days thereafter they recorded them, in the mortgage office. The claims aggregate only $1,067, and, therefore, if notified to the owner in time could, and doubtless would, have been paid out of the last installment of the contract price.
The Court of Appeal found that the house had not been completed at the date the certificate was given, but was completed only some *25 time afterwards — less than 45 days before the notification and recordation of the claims ■ — and gave judgment for the plaintiffs. The defendants contended that the certificate of the architect to the completion of the house fixed the date of completion and of the commencement of the prescription of 45 days provided for by the act of 1906.
Our Brethren of the Court of Appeal did not find, so far as their opinion shows, that the architect’s certificate of completion was not given and accepted in good faith; and the facts of the case leave no doubt but that it was so given and accepted.
Such being the case, we'think the furnishers of labor and materials and the subcontractors were bound by it. They were cognizant of the provisions hereinabove recited of the building contract, by which the payments were agreed to be made on the certificate of the supervising architect to the effect that the work had been done according to the drawings and specifications, and that the payments were due, and by which, in case of any dispute as to the meaning of the drawings and specifications, the decision of this architect should be final. The law required this building contract to be recorded for the very purpose of enabling them to inform themselves fully of its contents before extending credit to the contractor on the faith of it. They must therefore be held to have had these provisions in mind when consenting to deal with the contractor.
This was the view taken by this court in the case of La. Molasses Co. v. Le Sassier, 52 La. Ann. 2079, 28 South. 222, where the following from the decision of this court in Rousselot v. Kirwin, 8 La. Ann. 302, was quoted approvingly: .
“We consider the convention of the parties to have been an absolute one for the payment of the sum of $2,500 per month, provided the architect gave his certificate that there was such an amount due. We are further of the opinion that the applicants are protected in such payments by the certificate, of the architect, and that it is incompetent for the plaintiffs to go behind the certificate and to show that it did not state the truth.”
Our Brethren of the Court of Appeal took the view that the doctrine here enunciated was inapplicable to the present ease for the reason that: •
“In this case the finality of the architect’s decision is restricted to his interpretation of the plans and specifications, and not to their execution.”
We do not see why there should be any' necessity that the architect should be made the final arbiter in the matter. Nothing shows that in the cases above referred to, which our Brethren have sought to distinguish from the present case, he had been made such. In those cases, so far as appears from the decision, it had been simply agreed that the payments should be made on his certificate. Indeed the owner, having bound himself in his written contract to make payment on the certificate, would have scant ground to stand on for refusing to do so, unless he could show that the certificate had been given through fraud or manifest error. As said by this court in the case of Dugue v. Levy, 114 La. 21, 37 South. 995:
“When a building contract stipulates that the work shall be done under the supervision of an architect, and that payments shall be due only upon the production of a certificate from such architect, the architect is made primarily the judge of whether the contract has been fulfilled or not, and his findings * * * should not be lightly overruled.”
By agreeing that payments shall be made on his certificate, the parties practically agree that he shall be the arbiter. And why should not subcontractors and materialmen be bound by the decision of this arbiter, if based upon knowledge of the situation and honestly given?
The point of time when a building may be considered to be completed is not a matter so patent or self-evident that it may' be left to speak for itself. This is shown by the fact that in every building contract provision *27 is made for the selection of some competent disinterested third person to pass upon, the matter, usually the supervising architect, as in the present case. Now, if the date fixed by the decision of this person is not to be conclusive (in the absence, always, of fraud or of gross and palpable error), where is to be the starting point for this short prescription of 45 days? Is the contractor to be kept indefinitely out of his probably much needed money, or is the owner generously to take risks, and then, have the possibility of such contractors’ and furnishers of materials’ claims hanging indefinitely over him simply because some trifling things still remain to be done to the house? things, be it noted, which, because of lack of material or other good reason, cannot be done possibly at the moment, but may, without any inconvenience to anybody, be done just as well later. We fear that under the doctrine of the decision of our Brethren of the Court of Appeal this salutary prescription of 45 days would practically be robbed of its usefulness.
The judgments of the Court of Appeal and of the district court in these cases are set aside, and it is now ordered, adjudged, and decreed that the suits of the plaintiffs be dismissed, and that the plaintiffs pay all costs.