The opinion of the court was delivered by
Breaux, J.
Plaintiff pleaded as in a concurso to compel the parties concerned to appear in court and assert their claims and rights over a fund of twenty-six hundred and forty-two and 5-100 dollars, which it deposited in court. It is alleged, in substance, by it, that in 189.6, by written contract, it entered into a contract with a contractor and builder to erect a five-story warehouse building for the price of thirteen thou■sand four hundred and forty-two dollars, to be paid on terms as stated in the contract; that the Fidelity and Deposit Company, of Maryland, became the surety of this contractor up to the amount before stated; that the contractor and plaintiff selected Louis A. Ganteii, an architect, as superintendent and supervising architect of the works, and notice of the selection was duly given to the Surety Company; that payments -were to be made to the contractor at the end of each month for all the work done during the month less twenty per cent., which was to be retained by it until the completion of the building; that the payments were- to be made on the certificates of the superintendent of construction, Ganter;,that the sum alleged, except the amount deposited as before stated, was all paid to the contractor, and a large portion was paid with the consent of the Fidelity Company, surety; that since the. payment of this sum, attested accounts by workmen and material men were ■served on it for material supplied, amounting to a large sum, about six thousand dollars; that after service of these accounts it refused .to make further payments; that it notified the defendant, the Surety Company, that the contractor was quite slow in performing his work; that on October 5th, 1896, plaintiff seeing that he would not complete it, gave him *2072 notice that if he did not carry out the contract, it would avail itself of its rights and that a copy of the notice was served on the Surety Company. He, the contractor, failed to finish tire work and abandoned the-building; that, again, in November, it called in vain upon these parties to finish the work; that it was then that plaintif took charge of and completed the building according to specifications; that a part of the-front wall was badly constructed by the qontractor and had to be reconstructed in order to comply with the Specifications.
Petitioner also alleges that after making payments as stated, it had a balance on hand which it did pay over to the depository of the court, as-before mentioned, less the sum of twenty-five dollars reserved for costs; that it was necessary to form a concurso and bring in all interested parties in order to settle tire right of each. The building contract, specifications, and the contract of the contractor with the Fidelity and Deposit Company are all in evidence containing the terms and conditions usually inserted in such contracts and the details usual in specifications. The material men who had recorded their claims were made parties by plaintiff. Five of these men had brought suit against the plaintiff alleging that plaintiff had made payments by anticipation which resulted in' their injury. These suits are all consolidated en concurso, and are before us for decision. Those who had not sued appeared’ on the day of trial and were permitted to prove their claim.
The Fidelity and Deposit Company pleaded the general denial, and,, also, specially averred that plaintiff had made an over estimate of the-work performed each month, and had, in consequence, overpaid the contractor each month and the' payment in anticipation had caused it to-lose a considerable amount, sufficient for it to claim its release and discharge on its bond. The creditors made parties joined in the concurso issue with those opposing their interests and claimed the amounts due-them. Defendant avers that after a large amount of costs had been incurred and it had proven that the tender of 'the before stated amount was insufficient, plaintiff deposited a further sum of twenty-three dollars, and, thereby, made a second tender.
The statement of facts shows that some time after having agreed upon a plan of the building, plaintiff entered into a contract with a builder to erect the five-story building in question in accordance with the draw7 ings and specifications identified with the contract, i. e. the plans and specifications were prepared by the architect sometime prior to signing-the contract with plaintiff. They were accepted by plaintiff and bids *2073 were received by plaintiff. A Mr. Ganter made a bid for the contract, but as it was not the most acceptable and that of Mr. LeSassier was, it was awarded to the latter, who is also an architect, and who signed the contract and bound himself to build the warehouse as contractor and builder. After his bid had been accepted, LeSassier rfeleased the Molasses Company from its promise to pay him for his plans and specifications, and, with the consent of LeSassier, and after notice to the Surety Company, Ganter was employed by plaintiff as his superintendent-and supervisory architect. The Surety Company knew about the time that Ganter was employed, that he had been employed.
The builder bound himself to furnish all the labor, tools, and materials of every description and to deliver the work complete, free from all liens for labor and materials, on the fifteenth day of September, 1896. Payments were to be made monthly, for all work done in one month. Payment was to be made at the end of each month, in amount twenty per cent, less than the value of the work done during that month. The twenty per cent, deduction was to be retained until the building was completed. The plan or specifications are, to some extent, defective, unless the defect be supplied by the following, copied from the specifications: “Iron Work — Furnish and erect in place all iron work required to finish the building, as follows, viz. Oast iron and all the ordinary cast iron plates, well plates, capitals, etc., as per detail. Wrought Iron — All wrought iron work in connection with carpenter’s work, such as joint bolts, anchor iron for floor guards and door frames, tie bolts, etc., as per detail. In addition to what is specified above, all iron of any description necessary for the proper construction of the building shall be furnished, by the contractor without extra expense to the company”. It is contended by the Surety Company that the specifications provided for the construction of the arches, under the head of brick work, and that it did not contain anything about iron lintels or anything of the sort. The contract also contained a stipulation that if the builder failed to comply with its terms then plaintiff was to have the right to put an end to the contract and complete the work at the expense of the builder without being liable or accountable for the manner whereby plaintiff completed the work.
The builder furnished a bond in favor of plaintiffs, signed by the Fidelity and Deposit Company, in accordance with the terms of the Stat *2074 ute 180 of 1894, in which the latter bound itself, if the plaintiff failed to carry out the agreement between plaintiff and builder, to pay all .amounts necessary to complete the building as agreed upon, provided plaintiff notified it of any act of the builder “which may involve a loss”. About the end of the third month’s work on the building, the builder progressed quite slowly with it. Not long after there appeared fissures ■or cracks in the front wall. The builder had abandoned the work and the Surety Company was notified. Another architect was called upon, who dre.w plans and specifications under which the arches near where there were cracks, were reinforced, and the defects which had caused the fissures in this wall were remedied, and the opening or cracks closed and the building completed. The architect employed to see to the completion of the work says that the cracks were caused by the weight coming down too heavily at a iff ace over the arches; that he had the arches taken down on the first floor and that three rows of sill beams were laid sufficiently strong to carry the weight of the floors and brick tiers. Prior to this there were no beams over the arches, only brick work, though it appears iron lintels were necessary. We are informed that originally the floor beams over the arches ran directly into the wall over the opening.
And that the change in the construction of the arches was necessary.
It is averred by the Surety Company that the building was constructed according to the plan and specifications, and that the Surety Company is not responsible for the defects therein, as it bound itself only to see that the builder would complete the building according to the plan and specifications. The Surety Company also complains of anticipated payments made to the builder, also of over estimates whereby the contractor received a larger amount than he should have received at the end of each month; that he was only entitled at the end of each month to amounts earned during that month. It is a fact that’in this case there was paid nine hundred and twenty-two 22-100 dollars on June 1st, for May’s labor account, four thousand and seventy-three 52-100 dollars on July 1st, for June labor account, and four thousand seven hundred and ninety-seven 76-100 dollars on August 1st, for July labor account, and that a lárge part of these amounts was paid with the consent of the general agent of the Surety Company. It is also a fact, as charged, that plaintiff sold old bricks to the contractor for two hundred and eighty dollars, which were collected only in Aug: ust, though the bricks were sold in May.
*2075 One of the general agents of the Surety Company being questioned with reference to the bond executed by them said that before signing a bond for any one they examined the contract and specifications and all other data so that they might become familiar with the plan of the building to be constructed, and that they did so in this case. In addition he stated that it was usual with the agents of the company to become familiar with the financial standing of the contractor and his record as a builder. It is in place here to state that the material men, made parties en concurso, claim the amounts due them respectively. There is no objection to the amounts claimed, but, as we take it, the complaint is that the amounts are not due by the Surety Company. It appears that the superintendent issued certificates based on estimates for plaintiff showing work done at the end of each month during the progress of the work. These payments amounted to nine thousand five hundred •and ninety-three 50-100 dollars, and all that was due except 20 per cent., as agreed upon, was paid. This was all done before any of the creditors had served attested accounts of their claims. All the labor was paid and there are no workmen or laborers claiming in this suit.
Judgment for the Louisiana Molasses Company was pronounced in the District Court accepting the sum of two thousand six hundred and ninety and 50-100 dollars, making up the two tenders and deposits as the amount due to the contractor, LeSassier, and the other parties in interest, and decreeing further in favor of plaintiff for all its costs, as stated in the judgment.
The plea of prescription filed by the Surety Company was not sustained and judgment was rendered against said company in favor of ■each creditor for the deficiency. There was a judgment rendered in favor of the Surety Company against those it called in warranty on their indemnity bond in favor of the surety. From the whole judgment the Surety Company appeals.
All the parties admit that the contractor and architect contracted to build a large brick building for plaintiff, and that the aforementioned 'Surety Company bound itself as his surety. It is also evident that there is no further issue among the parties growing out of the fact that plaintiff took possession of this building before it was completed, and after-wards completed it as alleged. We understand that possession of the building was taken with the consent of the Surety Company. The rights of the parties are not prejudiced by the act of possession of plaintiff. The only question regarding the construction relates to certain *2076 charges for re-enforcing the wall and for completing the building. "With reference to the weight of the articles placed on the'floor of the building by the plaintiff, after it had taken possession, the preponderance of the testimony shows that it was not the.cause of the crack in the wall. This disposes of the Surety Company’s complaint of the overweight placed on the floor by plaintiff bearing heavily on the arches.
The only remaining difference between the plaintiff and the Surety Company arises from the latter’s complaint that the former, the Louisiana Molasses Company, dic^ not guard itself against the specifications and plans furnished it by the architect, and also did not comply with the stipulations and- conditions of the bond.
In the first place we take up for decision the complaint of the Surety Company directed against the plan and specifications of the architect. The Surety Company insists that the defect in the wall over the arches was not caused from the defective construction of the building, but was-the result of the faulty plan, conformably to which the building was constructed.
The contention on its part is that although the plaintiff company entered into a contract with LeSassier bj' which he agreed to “erect, furnish, and deliver in a satisfactory condition and workmanlike manner one five-story warehouse, all per plans and specifications drawn by Louis LeSassier, architect and builder”, and although the Surety Company bound itself for the faithful carrying out of the building contract, nevertheless it did not bond him as an architect nor did it guarantee-that plans and specifications which had been prepared by him and accepted by the Louisiana .Molasses Company, long prior, were proper and sufficient. It bonded him as a builder. On this point we do not find that the position of the Surety Company is sustained by the facts, or the law. In our view, there is a difference in matter of the responsibility of an architect. If he has only furnished defective plans and specifications, he can be held bound and accountable only in case the building has been constructed strictly in accord with them when no fault is imputable to the builder or contractor. lie is then independent of the contractor and builder and one surety or the latter would not be bound for the error of the architect, but it must be different where the architect has taken charge of the execution of his plan. Here he had his own plan, selected his own sub-contractors, and his own workmen and the-materials which were used in the construction of the building. He then becomes responsible to the owner with whom he contracted. Architect *2077 ure is the art of building according to certain determined rules. The owner does not know the rules. He employs an architect who makes the plans in accordance with them, and if the architect undertakes to carry out his plan, he is not to be heard after he has executed it, to urge, as an architect, that his employment having changed from that of an architect to that of a builder, he is no longer bound for his defective plan, particularly in the presence in his contract of these words, “architect and builder,” showing the extent to which he is bound, i. e., (as architect of the contract). On suit brought against an architect, contractor and builder bound as such for loss occasioned by affective work, the contractor and builder should find no relief in the plea that he is not responsible for the reason that the fault was with the architect. This responsibility, we infer, was well understood by the agents and representatives of the Surety Company, who properly made inquiry regarding the standing, character and ability of the architect, who was also contractor or builder, in order, as we take it, to protect themselves against too great a risk. In this case, they, the Surety Company’s agents, did more, and required an( additional security in the shape of an indemnity bond of the assured to secure their company to some extent at least.
We believe, under the terms of the contract, the Surety Company is liable for all expenses for completing the building and repairing the cracks in the brick arches, including the charges of the experts whose employment was made necessary by the condition in which the building was. We leave these propositions (viz: touching the insufficiency of the specifications and the cracks in the wall) with the statement that though it may be true that whenever an owner takes bids on plans and specifications made for him by an architect, the contractor to whom the bid is awarded is not responsible for defects caused) by incorrect plans or specifications; the case is different where the contractor draws up his own plans and specifications as an architect. For that reason we do not accept, as applying, the decisions cited by the. Surety Company as precedents having bearing upon the .issue presented.
We take up the Surety Company’s next ground of complaint: That payments were not made in accordance with the terms of the contract, that is. the payments were not all made for all the work done in one month at the end of the month (less the twenty per cent mentioned in the contract). The first item falling within this objection, the Surety *2078 Company urges, is the sum of two hundred and eighty dollars due for old bricks which were used in the foundations, to which we have referred heretofore in our statement of facts. If due at all, the Surety Company avers ii; should have been paid out of the estimate due on Tune 1st. We think that plaintiff, as between it and the contractor, had the right to sell to the latter material at its value. Under the circumstances here, as between him and the plaintiff, the objection in our view cannot be sustained. The Surety Company has not shown that any error or wrong of any kind has been committed which gives to it the right to have this amount added to the fund to be distributed. This amount was, as wo take it, considered in the estimate and was covered by the superintendent’s certificate. We do not think that it should be singled out to be deducted. Of itself, the fact that a furnisher of supplies did not collect a comparatively small amount, during, and his claim was not considered in the estimate of, the first month, would not give rise to cause to have the payment recalled and cancelled because it was taken into account and paid in the month following.
The next item covers the claim of the Brackenridge Lumber Company for an account paid, the Surety Company asserts, before the architect had furnished any certificate. There is a conflict of testimony as relates to this claim and the claim of the Salmen Brick and Lumber Company. The two plaintiffs and the contractor testify that the purchase as made from the former was necessary and that the Surety Company consented. This is denied by the Surety Company. The district judge found that the preponderance of proof as to this claim was with the plaintiff. We do not find that in thus deciding, he was in error. The lumber was received and used in the construction of the building. We think that it was included in the estimate of the superintendent and covered by the certificate. This, with the consent of the Surety Company’s agents, if given as testified to by three of the witnesses, would answer the objection to payment in anticipation. One of the witnesses for plaintiff testified that the work was being delayed and that the company refused to deliver any more lumber unless the amount in question was paid, that tire matter was brought up before the bond company and it was agreed that it should be paid. Furthermore, there is the written evidence of the general agent of the Surety Company showing, as we think, its consent.
We now pass to the over-estimates alleged by the Surety Company. There is no question but that in' a controversy over the amount due the *2079 contractor under a building contract, great weight is due to the certificate of the architect or superintendent, issued without fraud or palpable mistake. Here it is charged that the contractor has been overpaid to the prejudice of the material men, and this objection is urged by the surety. The complaint urged by the Surety Company is that the superintendent and supervisory architect and agent of plaintiff was familiar with the plan and specifications and that he should have estimated with approximate certainty, but that in this he failed.
The Surety Company charges that the superintendent admits that while he made the estimates for June 1st and July 1st, he permitted the contractor and builder himself to make the estimate on August 1st for the month of July. The testimony shows that a large amount was paid on the contract with the knowledge, and, as we take it, with the consent of the Surety Company. Plaintiff, in compliance with the request addressed to them by the Surety Company, made its checks for August on this contract, payable to LeSassier, contractor, and the Surety Company. These checks amounting to within a few hundred dollars of tho sum due for the work done in July, were received by the Surety Company, and the contractor jointly, but were turned over subsequently by the Surety Company to the contractor. The proceeds were not used as the Surety Company avers it had the right to have them used, but they, none the less, we must say, had control of the amounts, and, as we think, can not urge with any degree of plausibility that the plaintiff, as to these sums, made payments which it should not have made.
It must be borne in mind that payment was to be made on the certificate of the superintendent o£ construction, and that the superintendent had issued hisi certificate prior to each payment showing an estimate equal to the amount paid. In Rosselot vs. Kirwin, 8th Ann., 302, referring to such a certificate, the court said: “We consider the convention of the parties to have been an absolute one for the payment of the sum of twenty-five hundred dollars per month, provided the architect gave his certificate that there was such an amount due. We are further of the opinion that the appellants are protected in such payments by the certificate of the architect and that it is incompetent for the plaintiffs to go behind the certificate and to show that it did not state the truth.” We are decidedly of the opinion that the quotation is direct and determinative of the issues upon this point. Plaintiff has performed its part of the contract -by retaining the .twenty per cent, which it had bound itself to retain. This part of the stipulation looking to the guar *2080 .antee of the Surety Company is unassailed. The certificate was based upon estimates. The word “estimate” precludes accuracy. Judge Rcdfield, speaking of contracts of construction says that “monthly estimates” are understood to be mere approximations. 1st Redfield’s Railways, p. 436. If there were mistakes in the case here, they were not '“obvious,” nor did they arise from “partiality,” grounds which have .been considered to take a case out of the application of the rule. It would be different, doubtless, if there were any question of fraud at issue, or downright negligence on the part of the plaintiff, but there is nothing of the kind. The plaintiff trusted the superintendent and contractor, in whom all concerned had the utmost confidence, until it was too late to avoid loss.
We pass to a consideration of the Surety Company’s plea of prescription on the limit of ninety days, contained in the Act 180 of 1894, during which unpaid material men and furnishers have a direct action. The contract entered into between plaintiff and the Surety Company •extended the time within which any suit might be brought to six months. Before the expiration of ninety days after the building had been completed, the concurso proceedings had been filed. The funds were deposited and prayer was made to cite all the creditors. Several •creditors did not file an appearance within the six months. There was, none the less, a standing acknowledgment in favor of all concerned. Moreover they were all joined, and, in law, considered parties to the •concurso and were called upon to divide, in proportion to their claims, the funds deposited.
For the purpose of the litigation and settlement, the rights of each, in the concurso, to an extent, are admitted.
Any debtor whose property is encumbered in favor of a number of •creditors may implead them, and bring about a settlement of their rights, one with the other.
A contesbatio litis, as it were, arises in ease of the estate of an insolvent under administration. Jurisprudence has sanctioned this method •of proceeding, and the legal effects must follow as in other similar cases. For instance, when the syndic files his tableau of account, though the creditors are not all actually cited, they are constructively in court. The time within which the tableau is before the court for approval cannot be computed as part of the basis for prescription. True, in the ease of insolvency, prescription is suspended by statute. But as relates to *2081 the administrators of successions, without a special statute on the subject, the same rule governs. . .
. When the administrator files his account, every creditor whose claim is carried thereon is protected, without service, from the plea of prescription. The debtor, in the case before us for decision, has filed -a petition, in effect the same as, as relates to prescription, to the syndic’s tableau, or the administrator’s account. If it, the proceeding here, has any validity at all, it must have the weight and the power of the syndic’s tableau or administrator’s account.
The plea of prescription is sbricLi juris. It is not presumed. The onus to sustain it is with plaintiff, both as relates to the facts and the law. For this reason it has been held by the courts 'that the service of citation, with copy of the petition, though neither bears the impress of a seal, is sufficient to interrupt prescription. The want of jurisdiction and the many errors of form affording cause to reject the demand have none the less, prevented prescription from accruing.
Plaintiff alleged the liability of the Surety Company, and prayed the decree of the court. The action was pending before the delays had elapsed. Plaintiff has deposited the cash it owed and tendered its bond for the remainder, which is equivalent to cash. To obtain its discharge, in case the contractor defaults, if he have no bond, he would have been obliged to deposit the whole of his indebtedness to the mate-' rial men, which would have been an express acknowledgement of it. In* stead, he deposited the balance due by him and tendered the bond the law authorizes him to substitute to cash, in certain cases. Clearly, prescription does not lie against those named in the papers as creditors, with the right to share in the amount deposited and in the proceeds of the bond necessary to discharge the obligation.
We taire up for decision the defence of the want of tender made by the Surety Company. There was a deficiency of an amount which the plaintiff tendered and another tender was made. Be the cause of the mistake whatever it may, the law is peremptory that to avoid costs a tender must- be made. There is an exception arising when the one to whom the tender is made refuses to accept. None the less, the tender made at the time, must include the whole sum, including costs. That question was considered in a similar case and the court held that plaintiff should have deposited the whole amount she was bound to pay.. Allen vs. Wills, 4th Ann., 98. This rule is affirmed in McComas vs. Administrator, 4th Ann., 123.
*2082 This brings us to the claim of Manion & Co. Their claim was for one hundred and ninety 45-100 dollars. This was the amount of the account filed in evidence and which was shown to be due on the trial. The decree, evidently ¡by an oversight, allows this firm two hundred and eleven 45-100 dollars and legal interest.
It is ordered, adjudged and decreed that the judgment be affirmed except in two particulars, and, as to these, it is ordered, adjudged and decreed that plaintiff pay costs incurred in the District Court up to the date that the last tender was made by it, viz: November 21st, 1896, and also the costs of appeal.
It is further ordered, adjudged and decreed that the judgment in so far as Manion & Co. are concerned, be amended by reducing its amount from two hundred and eleven 45-100 dollars to one hundred and ninety 45-100 dollars, and that in so far as it is concerned, it is’ condemned to pay the costs of appeal.
The Cole Manufacturing Company, Lapiere and Foray, Manion & Company, A. Ledoux, Agent, Salmen Lumber Company, Limited, and William Hankins, have taken an appeal separate from the appeal taken in the Louisiana Molasses Company vs. Louis LeSassier et al. The brief in their behalf was filed in the cited case and their rights were therein considered and decided. In the case before us, no new issues are presented. The court can not be expected to pass twice upon the same questions among the same parties.
It is, therefore, adjudged, ordered and decreed that the judgment appealed from is affirmed save in the respects in which it is amended by the decree in the cited case — appellee to pay costs of appeal.
On Application op Louisiana Molasses Company por Reconsideration and Amendment op ti-ie Decree as Relates to Costs.
The amount which plaintiff failed to deposit being small as compared with the amount actually deposited, plaintiff invokes the maxim, De minimis non curai lex, as affording ground for deciding that the company does not owe costs to the date in the history of the litigation when the deficiency úAmatter of deposit was supplied by depositing the whole amount due.
Unquestionably it devolved upon the plaintiff to tender the whole amount it owed. Having failed in this, the costs are due as heretofore determined by us.
*2083 La matter of tender the whole amount must be tendered and an amount as large as plaintiff failed to tender, under the circumstances of the failure, does not come within the maxim cited.
We must decline to amend the judgment.
Rehearing refused.