(35 South. 550.)

No. 14,816.

POLICE JURY OF PARISH OF VERNON v. JOHNSON.*

(June 22, 1903.)

BUILDING CONTRACT — PERFORMANCE — DEFECTS—BOND—LIABILITY OF SURETY—REPAIR.

1. A clause in a building contract stipulated: "That the contractor shall at any time when required by the supervising architect, within one year from and after the completion and acceptance of the work herein contracted, make good any and all latent defects not discernible at the final examination and occupation thereof; such as evidence of the use of improper materials and labor."

2. The building was accepted, and payment made. After two years had elapsed, defects became evident. Defects growing out of the use of bad materials were cured under the conditions of the contract. The building was constructed under the direction of an architect, and under the inspection of a building committee. If there were defects of construction, it was not satisfactorily made to appear that they were such as the surety on the bond could be held for.

3. The meaning of articles 2762 and 3545, Civ. Code, will be construed strictly as against the surety on a builder's bond.

4. The liability arises (under just cited articles) should "the building fall to ruin either in whole or in part on account of the badness of the workmanship." It does not appear that the building was falling to ruin in "whole or in part." It was a valuable building, which was repaired, and the ruin in "whole or in part," with no very great difficulty, avoided.

5. After delivery of the building by the builder and acceptance by the contractor, and the expiration of 12 months stipulated in the contract, the contract could no longer, under the circumstances of the case, be violated actively; but, if there was violation, it was passive, and the parties were entitled to notice. Instead, plaintiff chose to have the building repaired, and then made demand for cost of repair, regardless of the right which the builder had to repair the work if repair was due by him. There is no question of fraud or deception on the part of the builder. The case of plaintiff presents question growing out of the asserted negligence to perform the work.

6. A number of architects testified that the plans and specifications were defective. It is not shown by the testimony that defect of construction was to be laid at the door exclusively of the builder. To hold his surety after such length of time, it would be necessary to prove that the principal was liable for the asserted defective construction.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Alfred Dillingham Land, Judge.

Action by the police jury of the parish of Vernon against Thomas C. Johnson. Judgment for defendant, and plaintiff appeals. Affirmed.

Sutherlin & Barret and Hall & Jack, for appellant. Lee Emmett Thomas, for appellee.

BREAUX, J. Plaintiff seeks to recover the sum of $5,000 from the defendant, as surety on a builder's bond executed by the builder in favor of plaintiff, for security of the due performance of the contract.

The charge of plaintiff is that the conditions of the bond were broken, because the builder erected plaintiff's courthouse of bad materials and in an unworkmanlike manner; that he did not follow the specifications. The defendant interposed by way of exceptions the pleas of nonjoinder, no cause of action, and filed an answer on the merits denying all liability.

The plea of nonjoinder grows out of the fact that plaintiff made the surety only party defendant, and did not sue the principal on the bond.

The plea of no cause of action seems to be mainly grounded on the plea of estoppel which this defendant sets up, and which was referred to the merits.

The record discloses that plaintiff's courthouse was finished, delivered, and that defendant had paid the price, about two years

before the suit was brought. The work was performed under the directions of an architect selected by plaintiff, in accordance with the conditions of the contract.

The testimony is conflicting. It remains that, after the building had been received by plaintiff, there was serious cracking of the wall in several places, the jack arches and brickwork over square head openings had given way in some places, and were about to fall, when repairs were made by plaintiff. One of the corners of the tower had yielded, and the tower was out of plumb, and slightly twisted toward the east.

The whole trouble, an expert reported, was due to a faulty foundation. There were other defects pointed out by him—a number of them.

The work was performed in the presence of the parish officers, who were charged with the same authority in the premises, and executed with the approval of the architect.

The contract contains an article numbered 16, which we will copy in extenso, because it has direct bearing upon the issues of the case, viz.:

"That the contractor shall at any time when required by the supervising architect, within one year from and after the completion and acceptance of the work herein contracted, make good any and all latent defects not discernible at the final examination and occupation thereof; such as evidence of the use of improper materials or labor in any branch of the work, causing the same to be imperfect and defective in construction or finish, and if such defects are not promptly made good when ordered by the supervising architect, he shall have the right to employ other parties to execute his orders, and charge the cost of same to the second party."

The last payment under the contract was to be made on the entire work when it had been entirely completed and accepted.

We have seen that the work had been entirely completed and accepted. From the fact that the committee representing plaintiff and the plaintiff accepted the building, we infer that there were no patent defects at the time.

The parties adopted conditions by which they are to be governed, and, whatever may be the right remaining as between the principal and plaintiff, the surety is not bound further than expressed in the contract. A surety is not bound for objects not in contemplation of the parties when the contract was signed. In case of defects, he held himself bound that they would repair, or that he could be held therefor. That was the extent of his liability, so far as the necessity for repair arose from the use of bad materials or labor.

It is true that the contract in question provides that payments shall not be considered as an acceptance of the "work executed, or a waiver of any rights or claims of the parties of the first part."

Is not this clause to be construed so as to protect the surety to the extent stated in the clause—within the 12 months, as stipulated by article 16? This clause further stipulates that no payment or acceptance was to do away with the right set forth in the article, in so far as the plaintiff was concerned.

The decision to which our attention is invited by learned counsel did not have to interpret the meaning of an article in the contract, such as article 16 of the contract before us for interpretation, and for that reason it was held that acceptance, when the owner could not do otherwise, did not bar him from recovering damages for defective work.

Here the parties laid down to some extent their own conditions, and allowed the time to elapse without making the least claim; and, furthermore, they limited the time, by article 16 of the contract, within which plaintiff was to find the latent defects for which the contractor and builder was to be held liable. They have to some extent, at least, changed the legal to a conventional liability, of which, at least, the surety can avail himself to the extent that the defective work is covered by the language of article 16.

It does not occur to us that the article before cited covers all the defects. There are vices of construction that may not be included within its grasp, if the vice does not arise from bad material or labor mentioned in the article.

There are vices of construction to which the articles (2762 and 3545, Civ. Code) cited by plaintiff have application.

It would be difficult in this case to determine with satisfactory certainty the extent the damages claimed may be due to bad material (for which, under no circumstances, the surety can be held) or to the vice of construc-

tion. The testimony has not pointed out a clear line or separation between the two. There is testimony going to prove that there was bad material used, which defendant sought to meet with counter testimony. There is testimony going to prove that there was vice in the construction. We have already said, as relates to the materials, we think that they are covered by article 16 of the contract.

With reference to the asserted vice of construction, there is testimony to the effect that whatever defect there was in this was due to defectiveness of the plans and specifications prepared by the architect. An architect of great experience testified that the plans and specifications were defective, that the foundation as laid down in these plans and specifications was not sufficient for the building, and that the footings of the wall were not broad enough.

Furthermore, the work was done in the presence of, and consented to by, the architect and, part of the time, the president of the police jury, and the building committee gave it their attention.

Returning to the law upon the subject, we find authority, not binding, it is true, but, in considering these articles, containing far-reaching conditions, that the interpretation of their meaning should be restrictive. 4 Fuzier-Hermann, p. 427, No. 1.

Under the restrictive interpretation, the surety of the contractor, when the contractor has followed the direction of the architect and others concerned, can scarcely be held, under the cited article, about two years after the work has been accepted.

The language of these two cited articles does not bring this case within their terms. They are to be construed together, and not, in case "the building should fall to ruin either in whole or in part on account of the badness of the workmanship," that the architect or contractor shall bear the loss. Civ. Code, art. 2762.

The photographs of the building, forming part of the record, and its value as testified to by witnesses, do not suggest ruin in whole or in part.

Granted that repairs ordinary or extraordinary, such as mentioned in article 572 of the Civil Code, were needed, the security can invoke the fact that his principal was not notified of the repairs due.

We adhere to the decision cited by learned counsel in which it was held that a person who performs a contract unskillfully on the premises of a person who has contracted for a first-class outfit, or a person who could not do otherwise than accept the situation, does not thereby waive damages. Schwartz Case, 34 La. Ann. 214.

The condition is different here; it is not contended that there was fraud or deception and there were no defects. Some time after all had been settled, they were discovered. We think, in such a case, justice requires that the contractor be notified. There was no good reason to ignore the contractor and call on the security.

The obligation of the surety was that the builder would build a courthouse in accordance with plans and specifications.

His liability was strictissimi juris, and not to be extended.

After the building had been completed, it was accepted and payment was made. At that date all was satisfactory. The surety had every reason to believe that he had been discharged, but, instead, it seems that the parties did not discover latent defects. When it became necessary to remedy these defects, the contractor was entitled to notice.

There was a completed contract—one of the parties in possession, the other paid. Years afterward, heavy repairs became necessary, due to a cause in regard to which there is variety of opinion. We think, under the circumstances, that there was no active violation of the contract.

The judgment is affirmed.