DI FRANCO v. ASCANI

(March 10, 1930. Opinion and Decree.)

Borah, Himel & Bloch, of New Orleans, attorneys for plaintiff, appellee.

U. Marinoni, Jr., and Michel Provosty, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. This is a suit for damages for the alleged breach of a written building contract entered into between plaintiff, defendant, and the Security Building & Loan Association on March 4, 1925. Defendant denied liability, and filed a reconventional demand for extra work.

There was judgment in favor of plaintiff for the sum of $700 on the main demand, and defendant's reconventional demand was dismissed. The defendant has appealed.

The petition alleges that on March 4, 1925, a written building contract was entered into between plaintiff as owner, defendant as contractor, and the Security Building & Loan Association, which assumed no responsibility, being merely a party to the contract to pay for the work performed; that the defendant undertook and agreed to erect and finish in "a perfect and workmanlike manner" and deliver to plaintiff a two-story double dwelling on South Rocheblave street, this city, for the sum of $14,000; that the building was to be erected and constructed in accordance with the plans and specifications which were made part of the contract; that on or about the _____ day of November, 1925, plaintiff was induced to accept the building with defendant's assurance that same was built in accordance with the contract, plans, and specifications, but it later developed that the said representations were false and untrue; "that the roof which was guaranteed by the contract, plans and specifications for a period of three years, was defective and leaked badly with each rain, as the result of which the ceilings of the said house were badly damaged"; that plaintiff verbally demanded that defendant repair the roof and the damage to the ceilings caused by the leaks, and on August 11, 1926, formally placed the defendant in default for not doing so; that the plaintiff repaired the said roof at a cost of $110 and the damage to the ceilings at a cost of $66; that the paving done under the contract was poor in workmanship and inferior in the material furnished, and, although defendant's attention was called to the de-

fects, he failed to remedy them, as a result of which holes developed in the paving so that it became apparent that the work would have to be done over at a minimum cost of $100; that the painting on the exterior of the building was improperly done; that the material used in mixing the paint was of an inferior quality, and improperly mixed, causing the paint to crumble and peel off the building, with the result that plaintiff will be put to the expense of $350 to have the house repainted in the manner provided by the contract, plans, and specifications; that the work of placing the roof on the building, painting the house, and the paving were not done in accordance with the contract, plans and specifications, and that plaintiff is entitled to recover the alleged damages on account of the defendant's breach of the contract; and that subsequent to the execution of the contract, it was verbally agreed between plaintiff and defendant that 120 feet of fencing called for by the contract would not be erected, and plaintiff would be allowed a credit of $1 per linear foot, or $120. Plaintiff prays for judgment against the defendant in the sum of $746, with legal interest from judicial demand until paid.

Defendant denied liability, averring that the contract, plans, and specifications were carried out, and that, if there were any defects in the building, they were the result of imperfections in the plans and specifications; that, if there were any leaks in the roof, they were due to the fact that the foundation of the building was not sufficient, which caused it to sink, and for which defendant would not be responsible; defendant reconvenes for the sum of $150 for extra work alleged to be due under a separate verbal contract between himself and plaintiff.

The contract, plans, and specifications provided that the contractor should erect and finish "in a perfect and workmanlike manner and deliver to the said party of the first part free from all encumbrances and liens a two-story dwelling. * * * Said work to be done in strict accordance with the drawings and specifications."

The specifications further provided that the contractor should furnish all material where not otherwise specified, "and shall lay out the work and be responsible for its correctness." The specifications contain a further provision that "all material employed in the construction of the said building, unless otherwise specified, to be of the best of their several kinds. All labor is to be performed in the best and most acceptable manner, by skilled workmen."

The house, under the terms of the contract, was to have been completed and delivered by July 9, 1925, but was not delivered until the middle of November, 1925, when plaintiff took possession of the building and recorded the formal acceptance in the mortgage office, as required by the building law of this state.

Defendant contends that the plaintiff, having accepted and occupied the building after the architect, Baehr, approved the building, is estopped from claiming damages, unless he was induced to accept the building through fraud. It appears that Mr. Baehr was the architect representing the Security Building & Loan Association which had loaned the plaintiff the money to pay for the construction of the building, having taken a mortgage upon the premises to secure the loan. The architect directly represented the homestead and not plaintiff, the owner of the property. Recording the formal written acceptance in the mortgage office was done simply in compliance with the provi-

sions of the building laws of the state, so that the owner would be protected against any liens that might be recorded against the property.

It further appears that the complaints concern latent defects which were not discovered until the building was accepted and occupied. For instance, the reason for the leaks in the roof was due to the fact that the slates were not properly lapped, the specifications calling for a three-inch lap or cover, whereas they were only lapped two and two and one-half inches. The fact that the paint would peel and dry out so as to become powdery like whitewash could not be discovered until ·a reasonable time after the building had been painted. All of the defects complained of evidenced themselves within six months after the building was occupied. The roof leaked so badly that plaintiff was compelled to have a new one placed on the building within two years after the house was built. The evidence convinces us that the defendant contractor knew that he had failed to comply with the contract, plans, and specifications, in the respects complained of in this suit, at the time he tendered the building to the plaintiff and plaintiff did not know of them.

By the acceptance and occupancy of the building the plaintiff did not waive any rights which he had against defendant for breach of contract, when the breach at the time of the acceptance of the building could not with reasonable care and diligence be discovered, due to the fact that the vices were latent defects.

In the case of Police Jury vs. Johnson, 111 La. 279, 35 So. 550, 552, the Supreme Court said:

"We adhere to the decision cited by learned counsel in which it was held that a person who performs a contract unskil-fully on the premises of a person who has contracted for a first-class outfit, or a person who could not do otherwise than accept the situation, does not thereby waive damages. Schwartz Case, 34 La. Ann. 214."

In the case of Leinhard vs. Meyer, 11 La. App. 328, 123 So. 130, this court held:

"Where it was intention of parties to building contract that building should be tenantable and constructed in workmanlike manner, and of good material such as to resist usual rains in locality, and contractor failed to fulfill obligations, resulting in leaks around windows and walls, contractor and surety were liable under contract and bond for damages which owner sustained. * * *"

See, also, R. C. C. arts. 2762 and 2769; Levy vs. Schwartz, 34 La. Ann. 209; Borrosky vs. Hill, 1 La. App. 431; Emdon vs. Olympia Roofing Co., 11 La. App. 614, 124 So. 615.

On the merits of the case, primarily questions of fact are involved. The record is voluminous and the evidence conflicting as to the alleged damages, but the district judge, after hearing the testimony of the witnesses, visited the building in question, and then rendered judgment in favor of plaintiff. The record shows that the evidence abundantly supports the findings of the district judge, and therefore his judgment in favor of plaintiff on the main demand will not be disturbed.

When the plaintiff in reconvention sought to introduce proof in support of his reconventional demand, defendant in reconvention objected to the evidence on the ground that the contract provided that there would be no charge for extra work, unless written estimates were submitted and agreed upon in writing before the work was commenced, and, as the petition in reconvention alleged that the extra work was done under a verbal agreement, but

did not allege that the provision in the contract requiring that extra work be agreed upon in writing was waived, the evidence was therefore inadmissible. This objection was referred to the merits.

Conceding that the evidence was admissible, the most favorable view we would take of the matter as far as plaintiff in reconvention is concerned, after a careful reading of the record, we are unable to say that the judge a quo was manifestly in error in dismissing the reconventional demand, only issues of fact being involved.

In the case of Stringfellow vs. Nowlin Bros., 157 La. 683, 102 So. 869, 870, the Supreme Court said:

"One who desires relief by means of a reconventional demand must institute such a demand in court. His position, in reconvening, becomes that of plaintiff. So much is this the case that, although the demand be inserted in the answer, it is not considered as a part of the answer, but as a petition setting forth a distinct cause of action. Powell v. Graves, 14 La. Ann. 873. It is therefore subject to all the rules of pleading applicable to plaintiff, and must be set forth with the same clearness and precision as if alleged in a direct action."

The court further said:

"It is clear, therefore, that the institution of a reconventional demand implies the existence of a prior suit or main demand in court. But, while the method of trial must be governed by the conditions of the main action, the reconventional demand enjoys the status of an independent suit, in which the burden of proof is upon the reconvener to establish the facts alleged."

We do not find that the plaintiff in reconvention proved his claim by a preponderance of the evidence.

For the reasons assigned, the judgment appealed from is affirmed.