11 So.2d 697

BARRAQUE v. NEFF et al.

No. 35891.

Nov. 30, 1942.

Rehearing Denied Dec. 30, 1942.

L. Percy Garrot, of Shreveport, for plaintiff and appellant.

O. W. & B. D. Bullock, of Shreveport, for defendants and appellees.

O'NIELL, Chief Justice.

This is a suit against a contractor and the surety on his bond for the cost of remedying defects in a building which was constructed for the plaintiff. The judge of the district court, after hearing the evidence, rejected the plaintiff's demand. She is appealing from the judgment.

The testimony leaves no doubt that the defects complained of—consisting mainly of cracks and leaks in the walls of the building—appeared within a very short time—and had developed into very serious defects within a year—after the building was completed. And it is virtually conceded that the cause of the cracks and leaks was that the walls were made of a very porous material, called super-rock, which absorbed too much moisture. Super-rock is a composition of cement and cinders, molded into building blocks. It was something new in Shreveport at the time when this contract was entered into; hence the contractors and builders there generally were not well informed of the fitness of super-rock for the construction of the walls of buildings in this climate. The evidence indicates that super-rock is perhaps suitable for the construction of the walls of buildings if they are waterproofed permanently by an outside finish. But in this instance the walls were finished in stucco and the absorption of moisture after hard rains, and the expansion and contraction of the super-rock, caused the walls to crack in many places and to let in the moisture to such an extent that the inside plastering was badly blemished. The consequence was that the house was hardly tenantable, until the owner had the house brick-veneered, and had it renovated inside and out.

The plaintiff bases her suit upon certain clauses in the contract which required that the contractor should provide and pay for the materials and labor and that the workmanship and materials should be of good quality. But the suit is founded particularly upon the following clause in the contract: "The Contractor shall re-execute any work that fails to conform to the requirements of the contract and that appears during the progress of the work, *and shall remedy any defects due to faulty materials or workmanship which appear within a period of one year from the date of completion of the contract."* [The italics are ours.]

■ According to that clause, the contractor was not only obliged to re-execute any work that failed to conform with the plans and specifications—or with the so-called "requirements of the contract"—and that so appeared during the progress of the work—but he was obliged also to remedy any defect due to faulty material or workmanship if any such defect appeared within a year after the completion of the building. There is no doubt that the defects in this case, which appeared within the year after the completion of the building, were due to faulty material or workmanship, because the using of super-rock without water-proofing the walls proved to be faulty construction. The question therefore is whether the mistake of using super-rock, in the way in which it was used, is attributable to the contractor or to the plaintiff. The defendants plead that the use of super-rock for the construction of the walls was specified in the contract, and that the work was done under the supervision of a competent and experienced building inspector employed by the plaintiff. The defendants contend that the building was completed in a workmanlike manner, and they aver that the cracks and leaks in the walls were caused either by the expansion and contraction of the super-rock or by the settling of the building because of defects in the soil. The evidence shows conclusively that there was no defect in the soil, no unusual settling of the walls, and shows that the cracks and leaks in the walls were caused entirely by absorption of moisture and by expansion and contraction of the super-rock. Our opinion is that the contractor is the one who is responsible for the mistake of using super-rock as it was used in this instance. Mrs. Barraque knew nothing about super-rock before the contractor suggested and recommended it. She desired brick-veneered walls, and was very reluctant in accepting the contractor's recommendation of super-rock. He designed the building, drew the plans and specifications, and prepared the contract for Mrs. Barraque's signature. She had no architect to advise her or to supervise the construction of the building. The inspector whom she employed was regularly employed as a building inspector for a building and loan association; and his duties in this instance, as he understood them and described them in his testimony as a witness for the defendants, consisted merely of seeing that the construction of the building was being done according to the terms of the contract. He acknowledged in his testimony that if the building

and loan association had intended to make a loan on the building he would have recommended furring between the super-rock walls and the plastering inside of the building. And when he was asked why he did not make that recommendation for the benefit or protection of Mrs. Barraque he replied that it was not required by the contract for the construction of the building. He made it very plain that his employment was merely to see that the work was being done according to the specifications of the contract, and that he was not employed to advise Mrs. Barraque with regard to any unforeseen consequence of the method or material with which the work was done. The doctrine that a contractor is not responsible for unforeseen and unfavorable consequences of work which he does in conformity with plans and specifications furnished him by the party for whom the work is done, or by an architect employed by such party, is not applicable to the facts of this case. Mrs. Barraque did not, by consenting to the use of super-rock for the construction of the walls of her building, or by employing an inspector to inspect the work as it progressed, abandon her right to depend upon the contractor's guaranty that he would remedy any defect that might result from faulty materials or workmanship and that might appear within a year after the completion of the building.

The defendants cite and rely upon the decisions in the following cases: Fremont v. Harris, 9 Rob. 23; Le Duff v. Porche, 5 La.Ann. 148; Powell v. Markham, 18 La.Ann. 581; Police Jury of Vernon Parish v. Johnson, 111 La. 279, 35 So. 550; and Louisiana Shipbuilding Co. v. Bing Dampskibsaktieselskab [perhaps it should be Dampskibsaktieselskabit], 158 La. 548, 104 So. 364.

None of the decisions cited supports the defense in this case. For example, in Fremont v. Harris, it is indicated in the syllabus that the burden of proof is on the plaintiff in a case like this to show that the cracks in the walls of the building were caused by bad material or bad workmanship, and not by an unfavorable condition in the soil; but in the concluding words of the opinion itself it is indicated plainly that cracks in the walls of a new building create a presumption that it was badly constructed; for it is said: "In the present case, the presumption resulting from the cracks in the walls, that the house was badly constructed, is rebutted by the concurrent testimony of the witnesses examined on the trial."

Le Duff v. Porche was a suit by a contractor for the contract price, $250, under a verbal contract, for installing a set of sugar kettles for the defendants. They pleaded that the work was done unskillfully, and that the consequence was that the kettles could not be used and had to be taken down and reset. The court found that the plaintiff had not contracted to set the kettles, had declared his inability to set kettles, had refused to undertake the job, and, at the request of the defendants, had agreed merely to have his brother, Honoré Le Duff, to do the work for the price stated. Hence the court said in the concluding paragraph of its opinion: "Their [defendants'] agreement was

that they would pay the plaintiff two hundred and fifty dollars for the setting of his kettles, if he would get Honorè Le Duff to set them. The only obligation which the plaintiff contracted was to get Honorè to do the work. He has complied with that obligation and is entitled to be paid."

In Powell v. Markham the court found that the cracks in the walls of the house were caused by the condition of the soil, and that the contractor was not responsible for the cracking of the walls, on the ground: "that the walls of the house were built according to the directions of defendant [owner of the house], and that defendant refused to have the excavations for the foundations of the walls made deep and broad, when informed by plaintiff's [the contractor's] agent of the possibility that the excavations were insufficient."

The case of the Police Jury of Vernon Parish v. Johnson was a suit against the surety on a contractor's bond to recover for defects in the new courthouse which the contractor had built for the parish. The reason why the court decided in favor of the surety was that the suit was not brought until *two years* had elapsed after the courthouse was completed and accepted, and by the terms of the contract the obligation of the contractor in that respect was merely to make good any defect appearing within *one year* from and after the completion and acceptance of the work. The court held that the liability of the surety did not extend beyond that of the contractor himself. And another reason why the court decided in favor of the surety was stated in the opinion of the

court thus: "The work was performed under the directions of an architect selected by plaintiff, in accordance with the conditions of the contract." [111 La. 279, 35 So. 551.]

In that connection the court stated also: "With reference to the asserted vice of construction, there is testimony to the effect that whatever defect there was in this was due to defectiveness of the plans and specifications prepared by the architect."

In that case the court cited with approval Levy v. M. Schwartz & Bro., 34 La.Ann. 209, where it was held that the acceptance of the work and payment of the contract price by the owner of the premises was not a waiver of his recourse against the contractor for structural defects which developed subsequently.

The case of Louisiana Shipbuilding Co. v. Bing Dampskibsaktieselskabit is merely an illustration of the doctrine that "if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications." [158 La. 548, 104 So. 365.] That doctrine is not applicable here because in this case the contractor himself drew the plans and specifications according to which he prepared also the contract for the construction of the building.

■ This case is controlled by the doctrine stated in Louisiana Molasses Co. v. Le Sassier, 52 La.Ann. 2070, 28 So. 217, thus: "The architect who prepared the plans and specifications of a building, and

afterwards became the contractor and agreed with the owner to put up the building according to plans and specifications, is responsible for any defect or insufficiency in the specifications. He cannot escape responsibility for defectiveness of the work by taking the ground that the defect was in the specifications and not in the work. He is responsible for both. The surety company which signs his bond to guaranty the safe execution of his contract as an 'architect and contractor' is equally as responsible as the architect and builder for the defectiveness of the specifications or the work, where the 'architect and builder' are one and the same person."

That decision was cited by the Court of Appeal for the Parish of Orleans in Leinhard v. Meyer, 11 La.App. 328, 123 So. 130, 131, in support of this statement: "It was the intention of all the parties to the contract that the building should be tenantable and constructed in a workmanlike manner, and of good material such as to resist the unusual rains in the locality. The building was not water-proof, as was contemplated by the contract."

The only remaining question is what amount the plaintiff should recover. It cost her $1,563 to have the brick-veneering done, and to reinforce the foundation so that it could sustain the additional weight, and to do the other work that was rendered necessary by the veneering of the house, that is, to remove and replace the back stairs and the electric and gas meters and the cornices above the walls. It cost her also $365 to repaint the building inside and out; all of which was made necessary by the cracks and leaks in the walls, and by the brick-veneering of the building. When Mrs. Barraque made her last payment on the contract price she retained $44. .This, of course, must be deducted from the $1,928 of expense which she afterwards incurred, leaving a balance of $1,884, which she is entitled to recover. She claimed also $128 for weather-stripping the windows which she said would cost $4.50 per window; but she did not state the number of windows that would require weather-stripping; hence she has failed to support her claim for what she may have to put out for that expense. She claimed also $20 for the removing and replacing of the shrubs surrounding the house, but failed to prove the actual cost of the work. She claimed also for the loss of rent, but the evidence does not show that she allowed her tenants a reduction of their rent. The total amount claimed in her petition was $4,000, the difference between the amount which she actually spent and the $4,000 being claimed for defects which have not been remedied. The first of these alleged defects is that the appearance of the house is impaired by the increasing of the distance between the windows and the outer surface of the walls, and by the lessening of the projection of the eaves, which defects were caused by adding the brick-veneering to the thickness of the walls. The other alleged defect is that there is a so-called crown in the floor of the downstairs apartment. Some of the witnesses testified for the plaintiff that the floor is about an inch higher in its center than at its outer

edges. But the evidence shows that that defect in the construction is hardly noticeable and does not affect the value of the building. As far as the impairment of the appearance of the house goes, our conclusion is that that defect should be deemed offset by the fact that the plaintiff has now a brick-veneered building. She is entitled to that because the evidence shows that brick-veneering was the only practical method by which she could be assured of permanently water-proofing the building. In this connection, the defendants urge as an alternative defense that the amount which the plaintiff is entitled to recover should not exceed $520, which amount, they contend, would have been the cost of water-proofing the building by a Texas firm, whose representative offered to do the work for that price. The representative testified, as a witness for the defendants in this case, that at the request of the contractor he examined the building and offered to water-proof it for $520. But the estimate and offer, which were made at the request of the contractor, were made after he had informed Mrs. Barraque that he could not remedy the defect in the walls of the building. In fact he testified that he made several attempts to remedy the cracking and leaking of the walls and finally admitted to Mrs. Barraque that he could not remedy these defects. One of his attorneys testified that after the attorney for Mrs. Barraque had informed the contractor that she intended to have the building brick-veneered at the cost which she afterwards sued for, the attorney for the contractor informed the attorney for Mrs. Barraque that the Texas

firm would water-proof the building for $520; but Mrs. Barraque was informed also that the Texas firm would not guarantee that the walls would remain water-proofed longer than two years. The Texas firm's representative, who testified for the defendants in this case, admitted that his firm would not guarantee the water-proofing for a longer period than two years, although he said it would last probably much longer. Considering the contractor's admission to Mrs. Barraque that he could not water-proof the walls of her building, she was not obliged to attempt to minimize her loss by employing the Texas firm to water-proof it under a guaranty merely that the water-proofing would endure for a period not less than two years. Our conclusion is that the plaintiff is entitled to a judgment against the defendants, in solido, for $1,884 and legal interest thereon from judicial demand.

The judgment appealed from is annulled, and it is now ordered, adjudged and decreed that the plaintiff, Mrs. L. P. Barraque, shall recover of and from the defendants, Robert Neff and the Employers' Liability Corporation, Ltd., or either of them, the sum of $1,884, together with interest thereon at 5% per annum from the date of judicial demand, that is, from June 5, 1939, and all costs of this suit.

On Application for Rehearing.

PER CURIAM.

In the brief in support of the petition of the defendants, appellees, for a rehearing, it is pointed out that in ren-

dering the judgment for the plaintiff this court overlooked the fact that the plaintiff, Mrs. L. P. Barraque, had died while the appeal was pending in this court, and that her only heirs, Mrs. Ethel D. Jones and J. C. Ducote, were substituted as plaintiffs and appellants by an order of this court rendered on September 21, 1942. Inasmuch as Mrs. Ethel D. Jones and J. C. Ducote, who are the only heirs of Mrs. L. P. Barraque, were substituted and made parties to this appeal as plaintiffs and appellants before the judgment was rendered by this court, it is not necessary to grant a rehearing in order to correct the obvious error of rendering the judgment in favor of the deceased Mrs. Barraque, instead of rendering it in favor of the substituted plaintiffs and appellants, Mrs. Ethel D. Jones and J. C. Ducote.

The prayer of the petition for a rehearing is merely "for a rehearing herein upon the ground that the decree of the court is contrary to the law and the evidence." The brief filed in support of the petition for a rehearing is merely a reargument of the points which were argued originally and which we have disposed of in the opinion which we have rendered.

It is ordered that the decree rendered by this court on November 30, 1942, shall be and it is now redrafted so as to substitute for the deceased, Mrs. L. P. Barraque, her sole heirs, namely, Mrs. Ethel D. Jones and J. C. Ducote, and so as to read as follows:

The judgment appealed from is annulled, and it is now ordered, adjudged and decreed that the substituted plaintiffs, Mrs. Ethel D. Jones and J. C. Ducote, as the sole heirs of the original plaintiff, Mrs. L. P. Barraque, shall recover of and from the defendants, Robert Neff and the Employers' Liability Corporation, Ltd., or either of them, the sum of $1,884, together with interest thereon at 5% per annum from the date of judicial demand, that is, from June 5, 1939, and all costs of this suit.

The petition for a rehearing is denied.

ROGERS, J., absent.