65 So.2d 115 (1952)
223 La. 136
MICHEL
v.
EFFERSON et al.
No. 40201.
Supreme Court of Louisiana.
November 10, 1952.
On Rehearing March 23, 1953.
Rehearing Denied April 27, 1953.
*116 Lemle & Kelleher and H. Martin Hunley, Jr., New Orleans, for plaintiff-appellant.
Gerald Netter, New Orleans, for defendants-appellees.
MOISE, Justice.
Mrs. Elise Michel, widow of Adolph Dumser, brings this action against Henry Efferson and his bonding company seeking to recover $4,042, with interest, for alleged defective construction work under a certain building contract for the construction of a duplex at the price and cost of $28,200. Plaintiff's suit was filed on December 30, 1949.
A prior suit was filed by the contractor against plaintiff on May 10, 1949. The suit was for extra work performed by the contractor on the construction of the duplex. To this suit, Mrs. Dumser filed a reconventional demand, alleging defective construction work which amount to the sum of $2,613. The result of this suit was the payment of the extras, and the reconventional demand of Mrs. Dumser was dismissed, with reservation. After the dismissal of her reconventional demand, plaintiff filed this suit for $4,042, almost double the amount of the original demand in reconvention. On a trial of the merits, the suit for a larger amount was dismissed, and, because of that dismissal, plaintiff prosecutes this appeal.
Defendants admitted the contract, but alleged that in the month of December, 1948, Efferson, Mrs. Dumser, her son, Mr. Charles Babington, Mr. Preston J. Perry and Mr. James J. Lynch, partners of the Continental Casualty Company, and Mr. Charles Hoffman, head of the Bond Department of the firm of Emory & Kaufman, representing Continental Casualty Company, met at the office of Continental Casualty Company, when the building had been completed and when, under the contract, *117 the last two payments of $8,820 were due to Efferson. At this meeting, plaintiff made certain complaints which defendant Efferson agreed to remedy. She complained about the plaster, and he refused to repair it. Mrs. Dumser agreed to accept the plaster as it was. She accepted the keys to the duplex moved into the property and made the final payments through her son. She rented the upper apartment. Defendant Efferson thereafter made the repairs he had agreed to make.
The plaintiff urges that the defendant Efferson refused to give her the keys to the duplex, unless she accepted it in its present condition. It is stated, in the testimony, that when the contractor refused to turn the keys over to the plaintiff at the aforesaid meeting, she stated she had to move into the house, and that under the circumstances, she felt forced to accept the premises in the condition in which they were at that time.
Defendants' witnesses swore that Mrs. Dumser took possession of the premises in December, 1948, before Christmas. She filed her suit on December 30, 1949. Defendants contend that more than a year had elapsed.
The guarantee clause of the contract reads:
"Unless otherwise called for all material and workmanship shall be guaranteed for a period of one year, starting from the date of acceptance of the contract. Should any material or workmanship called for by these specifications be of such a nature as to render this guarantee impossible, notice of this effect must be served in writing upon the architect previous to the signing of any contract. Failure to do this will be construed as tacit agreement to the terms of this contract."
An interpretation of the guarantee clause is not necessary to a decision of this case.
Plaintiff contends that she could not waive a right which was not within her knowledge. This is a correct statement of law, but, the law must be applied to the facts. The facts in the record before us are conclusive that the defects were not only known but discussed at length by all parties at interest and, particularly, that Mrs. Dumser knew the condition of the plaster. It is true that Mrs. Dumser did not see the plaster in the upper apartment because she did not go upstairs. But, whose fault was that? When she accepted the building she did not accept only the lower floor. When the balance due under the contract was paid by her, through her son, it was for the entire building contract. No advantage was taken of this lady. She was aided and advised at all times by her son, a capable business man, who drew the checks and made the payments, so, the argument that the waiver must be only for the intentional relinquishment of a known right, is a brutum fulmen. This knowledge is brought home, because at the time of the discussion of acceptance, Mrs. Dumser is quoted as having said that "she would swallow the plaster". The able counsel argues that the owner of the land has a right to take possession of the structure, without a waiving of her unknown right. Levy v. M. Schwartz & Bro. and Wm. Goldring, 34 La.Ann. 209; Payne & Joubert v. Amos Kent Brick & Lumber Co., 110 La. 750, 34 So. 763 and Borrosky v. Hill, Harris & Co., Inc., 1 La.App. 431. That position of law is well taken, but not in this suit, because the law must be applied to the instant facts.
The record shows that the representatives of the bonding company and the contractor were present when Mrs. Dumser and her son agreed to accept the duplex and waived her claimtaking the property as is, with the exception of certain repairs, which the contractor agreed to make and did make. The facts further show that Mr. Hoffman, the representative of the Bonding Company, explained that he was representing the company and was protecting and looking after its interest. If the defects were as numerous as claimed, necessitating the filing of a suit, he would have deterred Mrs. Dumser from paying the balance, which was an amount far in excess of plaintiff's claim for alleged defective work.
*118 In De Lambre v. Williams, 36 La.Ann. 330, our court said:
"The record shows to our entire satisfaction that all the charges which were made in the work, all defects in the job had been fully considered by plaintiff, and satisfactorily accounted for and explained in his mind, and that he had knowingly and unequivocally accepted the work and had settled for the same advisedly, and without any concealment on the part of the defendant. Hence his lips must be sealed from the utterance of any complaint." See also: Delaney v. Morter, 11 La.App. 310, 123 So. 517; Stabler v. Keaty, La.App., 42 So.2d 909; Lorino v. Charles Rowe Co., La.App., 48 So.2d 103; 17 C.J.S., Contracts, § 514.
It is true, the evidence is conflicting, but we must examine the recorded statements of the witnesses in the light of human experience. We must look at the influences that surround our fellows and then sound their hearts by the plummets we apply to our own, and, when we have heard all and have gone through with the anatomy of the heart, we who feel the influences of all motives that prompt action and all passions that stir the breast, know how to judge our fellowmen. The judge of the district court is in a better position to conclude on the evidence than we ourselves. Because he has seen and heard the witnesses, his conclusions on the facts should not be disturbed unless his findings prove to be manifestly erroneous. Diez v. Diez, 219 La. 576, 53 So.2d 677 and cases therein cited; Moser v. Moser, 220 La. 295, 56 So.2d 553.
For the reasons assigned, the judgment of the district court is affirmed, plaintiff-appellant to pay all costs.

On Rehearing
PONDER, Justice.
This is a suit to recover from a building contractor and his bondsmen $4,042, the amount required to remedy faulty construction; for legal interest from judicial demand; and for attorney's fees in the sum of $250. The demands were rejected in the trial court and the plaintiff has appealed.
From our appreciation of the record, it will take the amount sued for to correct the defective construction to conform with the specifications, attached to and made part of the contract.
Three disinterested contractors, two general contractors and a lathing and plastering contractor, testified that most of the plastering in the building was so defective that it would have to be removed and replaced in order to comply with the specifications. They testified that certain materials were omitted in some instances and inferior materials had been used instead of those called for in the contract. Their testimony is not contradicted and, according to these witnesses, the amount sued for would be required to correct the faulty construction.
The defense to the suit is to the effect that plaintiff's suit is barred and, if not barred, that she waived whatever claims she had when she accepted the building. The defendants take the position that the plaintiff's suit is barred because she failed to institute the suit within one year from the date she accepted the building, which they aver was accepted during the middle of December, 1948. The plaintiff's suit was instituted on December 30, 1949. Their position is based on their interpretation of a guaranty clause contained in the specifications, the pertinent portion of which reads as follows:
"Unless otherwise called for all material and workmanship shall be guaranteed for a period of one year, starting from the date of acceptance of the contract."
This clause does not deal with prescription of actions but merely guarantees the materials and workmanship for a period of one year from the date the building is accepted.
The defects in construction were ascertained within that period of time when the disinterested contractors examined the building in the fall of 1949. Therefore, the construction failed to meet the guaranty and the plaintiff had the right to assert her *119 claim for breach of contract within the time prescribed by law.
The defendants take the position that the plaintiff waived whatever claims she had for the defective construction at the time she accepted the building.
It appears that the plaintiff observed some defects in the construction of the building a few days before she accepted it and that a meeting was held at her instance with the contractor and his bondsmen, wherein certain defects in the construction of the building were discussed and that a list of the defects was drawn up by the agent of the bondsmen. This list was turned over to the contractor with the understanding that the defects would be corrected. This list was not presented in evidence and the testimony is very indefinite as to the defects enumerated therein and whether or not they have been corrected. If these defects were corrected, the ones now complained of were not included therein. If, on the other hand, they were not corrected, the contractor has not fulfilled his obligations. In any event, the contract has not been complied with. Much stress has been made over the fact that the plaintiff had knowledge that the plaster was defective in the downstairs portion of the house when she accepted the building and stated that she guessed she would have to "swallow the plaster." While the plaintiff knew there were some defects in the plaster in the downstairs portion of the house, yet we do not believe she would have accepted the building had she known the extent of the defects which were later ascertained by the independent contractors. She could not have known at the time she accepted the building about the defective plaster in the upstairs portion of the building because her testimony, that she did not go upstairs on account of her illness, is not contradicted. It is not shown that she had knowledge at that time that certain materials were omitted or that inferior materials had been substituted for those called for in the specifications.
It is suggested that the plaintiff's son, a business man, who was present at the meeting between the contractor, his bondsmen and the plaintiff must have known of the defects at that time and had so informed his mother. The testimony does not establish this fact and we cannot infer it. Especially is this true since the extent of the defects was not ascertained until three independent contractors examined the building several months thereafter. This witness testified in effect that he did not bother about the plaster at that time because he felt that his mother was protected by the guaranty, heretofore mentioned.
The defense of waiver is a special one and the burden of proof is on the defendants to show that the plaintiff had knowledge of the defects in construction and that she intentionally waived same.
The courts of this state have held that an owner is not estopped from claiming damages for the breach of a building contract by taking possession and moving into the building. The failure of the contractor to construct the building in accordance with the plans and specifications was a violation of the contract and the taking of possession of the premises by the plaintiff can not be considered as a discharge of the defendants' liability. Lobdell v. Parker, 3 La. 328, 331; Morton v. Pollard, 9 La. 174; Overton v. Simon, 10 La.Ann. 685; Miller v. Stewart, 12 La.Ann. 170; Nicholson v. Desobry, 14 La.Ann. 81; Conery v. Noyes, 17 La.Ann. 201; Gordy v. Veazey, 25 La.Ann. 518; Levy v. M. Schwartz & Bro. etc., 34 La.Ann. 209; Borrosky v. Hill, Harris & Co., Inc., 1 La.App. 431; Payne & Joubert v. Amos Kent Brick & Lumber Co., 110 La. 750, 34 So. 763; Police Jury v. Johnson, 111 La. 279, 35 So. 550; Di Franco v. Ascani, 13 La.App. 2, 127 So. 76. The rule in regard to a waiver is stated in 56 Am.Jur. Verbo "Waiver", par. 12, page 113, thus:
"The essential elements of a waiver, within the definitions already given, are the existence, at the time of the alleged waiver, of a right, advantage, or benefit, the knowledge, actual or constructive, of the existence thereof, and an intention to relinquish such right, advantage, or benefit. Voluntary choice is of the very essence of waiver." *120 Waiver involves both knowledge and intention and it follows that ignorance of a material fact negatives waiver. Waiver can result only from the intentional relinquishment of a known right. Utley v. Donaldson, 94 U.S. 29, 24 L.Ed. 54; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Women's Catholic Order v. City of Ennis, 5 Cir., 1940, 116 F.2d 270; Champion Spark Plug Co. v. Automobile Sundries Co., 2 Cir., 1921, 273 F. 74; Hirsch v. Isaac Joseph Iron Co., 3 Cir., 1922, 278 F. 924.
The failure of the contractor to construct the building in accordance with the contract was an active breach of the contract on his part. He withheld the keys to the building and refused to deliver possession of the premises to the plaintiff unless she would agree to accept the building with the defects she had complained of. He took the position that the contract had been completed and that he would not correct these defects, he did not withhold the keys and refuse possession of the premises with the view of correcting the defects. Under such circumstances it was his duty to deliver the keys and the premises to the plaintiff, it was her property and he had no right to refuse her possession of it. She was by necessity forced to take possession of the premises irrespective of the defects she had complained of. She had sold the house she was living in and actually needed possession of the premises for her home. Under such circumstances it cannot be said that the plaintiff voluntarily waived any of her rights. Voluntary choice is of the very essence of waiver. The law on this point seems to be well settled and there are many decisions to that effect, some of which are Gordy v. Veazey, supra; Levy v. M. Schwartz & Bro., etc., supra; Payne & Joubert v. Amos Kent Brick & Lumber Co., supra; Police Jury v. Johnson, supra, and Pratt v. McCoy, 128 La. 570, 54 So. 1012.
There is no stipulation in the contract regarding attorney's fees. We know of no law authorizing the award of attorney's fees in cases of this nature and none has been cited.
For the reasons assigned, our original decree in this case is set aside and the judgment of the district court is reversed. There is now judgment in favor of the plaintiff, Mrs. Adolph Dumser, and against the defendants, Henry Efferson and Continental Casualty Company, in solido, in the sum of $4,042 with 5% per annum interest from December 30, 1949 until paid. All costs to be paid by defendants-appellees.
Defendants-Appellees may under our rules apply for a rehearing.

On Rehearing
MOISE, Justice (dissenting).
The majority opinion on rehearing is based upon the assumption that Mrs. Dumser, the plaintiff, did not waive her right under the contract involved. That is exactly the position taken in this dissent, as hereinafter shown. "Modus et conventio vincunt legem"The form of agreement and the convention of parties overrule the law. Both parties are bound by what they have solemnly covenanted. The contract involved is supposed to be commutative, but it is unilateral in form. The trial judge who heard and saw the witnesses, dismissed the plaintiff's demands.
Since the contract of August 11, 1948 is the law of the case, we will briefly set out its pertinent provisions:
The contract price is $28,200, to be made in five payments.
The third, fourth and fifth payments are of great importance:

"Third payment of $6,000.00, to be made when house is plastered and weather boards placed.

"Fourth payment of $6,000.00, to be made when house is completed and accepted.

"Fifth payment of $4,200.00, to be made 30 days after the said building and all work contracted for hereunder shall have been completed and accepted by the said party of the first part. * * *"
The record shows that before the fourth payment stipulating for the contractual acceptance *121 of the building was made, Mrs. Dumser and her son called a meeting on or about December 15 or 20, 1948, with the contractor, at the office of the Continental Casualty Company, and, then and there, in the presence of three representatives of the Continental Casualty Company and the head of the bond department of Emory & Kaufman, Mrs. Dumser complained bitterly of the defects in the plaster and also enumerated various other defects in the construction. She requested the keys to the premises for the purpose of showing a proposed tenant through the house. After a heated debate, Mrs. Dumser stated that she accepted the structure "as is". This acceptance was made without reservation. The testimony of Mr. Hoffman, the bond company representative, and the three representatives of the Continental Casualty Company, as well as the testimony of Mrs. Dumser herself, verifies this fact. Later, however, in mitigation of the admitted acceptance, Mrs. Dumser urged that she did accept the structure and did so under duress and without waiving the defects in the construction. In accepting, she specifically said that she would "swallow the plaster".
The majority opinion on rehearing inadvertently classifies Mrs. Dumser's excuse for the unqualified acceptance as a restrictive one, and erroneously states that her excuse is a special defense on the part of the contractor, and that the contractor must prove that her unrestricted acceptance was a qualified one as to defects. It was the duty of the plaintiff to make herself clear, which defendant says she did. She further urges that the alleged defects were unknown to her, and without her bearing the burden of proof, this statement is accepted as proof as strong as truth of Holy Writ. Many authorities are cited to bolster this contention. They are not apposite because they are not supported by the facts in the instant case.
On page 5 of her testimony, Mrs. Dumser stated that
"The plaster was cracked. It was breaking and falling off the rooms, and in my bathroom downstairs it is all cracked, * * *.
"The painting is all coming off. It is falling off the plaster in every room * * *".
And then, she was asked:
"Did you notice these things before you moved into the house, Mrs. Dumser?"
She replied:

"Yes, I did * * *."
The defects were known before she moved into the house and Mrs. Dumser swears she moved into the house one day after the fourth payment was made, which was on January 7, 1949. No wonder, the district judge, who saw and heard the witnesses, dismissed plaintiff's demands.
Further, Mrs. Dumser admitting that she accepted the house "as is", says, she did so under duress, in order to get the keys. This acceptance relates back to the time she got the keys, which was at the time of the first meetingOn December 15 or 20, 1948and before the fourth payment on January 6, 1949.
It is hard to see how duress could have been exercised, because this contract is unilateral in form, if ever there existed a unilateral contract. Under its terms, the owner had the right
(1) To name an architect of her own selection, in case of dispute as to workmanship, plans and specifications, and his decision would be final;
(2) The contract was to be completed by December 31, 1948, or, upon his failure to so do, the contractor was to pay demurrage; and
(3) On each of the payments to be made by the owner, a certificate was to be obtained from the architect selected by the owner showing that the work had been done in strict accordance with the plans and specifications, and that the payments were properly due.
We presume that this procedure was followed when the third payment was made, "when the plastering had been completed and the weather boards placed", and we take it that the meeting at the bond company's office was called because Mrs. Dumser realized *122 that, when the fourth payment was made, such constituted an acceptance under the very terms of the contract.
Another provision of plaintiff's contract is that, if the contractor failed or refused to follow the plans and specifications, or to comply with any part of his contract, the owner had the right to enter upon and take possession of the premises and at once terminate the contract, and the owner also had the right to do the work, make the repairs, and deduct the costs thereof from the contract. This is strong corroborative proof of defendant's defense.
Then again, another unusual provision of this contract compels the contractor to guarantee the workmanship and the materials furnished by the materialmen for one year. The guaranty clause reads:
"Unless otherwise called for, all materials and workmanship shall be guaranteed for a period of one year starting from the date of acceptance of the contract". (Italics mine.)
The contract was accepted on August 11, 1948. This suit was filed on December 30, 1949, sixteen months after the acceptance of the contract and nearly five months after the guaranty clause of one year expired. These are the cold tomb stone facts of record in refutation of plaintiff's contentions. The law of every case must relate to the facts thereof.
It is further contended that by the filing of a reconventional demand, which pointed out almost the identical defects as urged before the plaintiff moved into the house, and now again urged in this suit, interrupted prescription. We are dealing with the guaranty clause of the contract by which the parties bound themselves, and the plaintiff, naturally, cannot extend the guaranty period of one year beyond the time fixed in her contract of one year. The plaintiff voluntarily dismissed her reconventional demand. If it were a matter of prescription, such would not interrupt. Elliott v. Brown, Executor, 13 La.Ann. 579.
It is true, plaintiff dismissed her demand with reservation, but we must take all of the facts into considerationthis could not possibly mean anything more than the reservation of the rights granted under the contract mutually agreed upon.
The majority opinion on rehearing states "This clause [the guaranty clause] does not deal with prescription of actions but merely guarantees the materials and workmanship for a period of one year from the date the building is accepted."
The foregoing statement may establish a dangerous precedent. The guaranty clause of the contract as to material and workmanship was for only one year, and yet, the decision declares that this plaintiff can bring her suit any time after the defects are discovered within the year. We do not know whether this means the application of prescription of one year or whether it means the prescription of ten years on this contract, and, if so, there will be dangerous consequences as to all construction work in this community, and every contractor will have to carry a bond for a period of ten years, provided notice has been given to him of certain defects in the building.
Feeling that the judgment of the district court is correct on the finding of facts, the judgment of the trial judge should not be disturbed. Originally, we affirmed that judgment. I am fully convinced, in the administration of justice, by due process of law, our affirmance of the judgment should have been permitted to stand.
I respectfully dissent.